[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of the Rhode Island Department of Human Services (hereinafter "DHS"). The plaintiff, Maureen A. Gaynor (hereinafter "Gaynor") seeks a reversal of the March 17, 1993 DHS decision. That decision affirmed the Vocational Rehabilitation Agency's initial decision to deny Gaynor's request for the purchase of a van as transportation services. Jurisdiction in this court is pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15.
According to the record, Gaynor is a young woman with cerebral palsy which affects her speech and all her limbs. She uses a wheelchair and assistive speech technology. She receives vocational rehabilitation services through defendant's Vocational Rehabilitation agency (hereinafter "VR agency"). In compliance with the requirements of the program, an Individualized Written Rehabilitation Program (hereinafter "IWRP") was entered into by Gaynor and a VR agency social worker on July 19, 1988. This IWRP was amended on August 29, 1990, reflecting Gaynor's planned goal of a career in architecture. The record reflects that the IWRP has not been reviewed since August of 1990 and will expire in December 1993.
Gaynor requested financial assistance for the purchase of a handicap accessible van. This request was denied by DHS by letter signed by Andre Mayer (hereinafter "Mayer") dated August 28, 1992. The letter stated the reason for the denial was "This is not within VR's scope or policy in providing services." Gaynor filed a timely appeal.
An administrative hearing was held on December 22, 1992. At the hearing Gaynor alleged that she needs a van to complete her internship in architecture, to become employable, and to practice as an architect. In support of her contention, Allen Berry, a qualified expert witness, testified that there are three requirements to become a licensed architect: a) graduation from an accredited school; b) passing a national exam; and c) participation in intern development program administered by a national accreditation board. He further testified that before taking the exam, an intern must complete three years of apprenticeship that must cover all aspects of the profession including but not limited to code, zoning and historic research at town halls, libraries and historic societies, overseeing construction at sites and meeting with clients. Berry also explained that only approximately 25% of an architect's time is spent sitting at desk designing and drafting because unexpected issues and unforeseen problems arise often necessitating meetings and visits to sites on short notice. On cross-examination, Berry confirmed that some architects work primarily in the office of some larger architectural firms or work primarily out of their home with computer adaptations but these individuals have either experience or additional education and it is difficult for firms to coordinate their work. DHS offered no evidence to contradict the statements and opinions of plaintiff's expert witness.
Gaynor further argued that DHS should help finance the van as an allowable service authorized by state regulation and federal law. At the hearing, she testified that she was aware that vans cost approximately $17,000.00, that rental of specialized accessible transportation costs between $150 to $250 per trip, and that she cannot afford either cost. Mayer, a VR counselor in charge of Gaynor's case, testified that transportation services are provided until a case is closed and that there is no dollar limit on the amount the VR agency will pay for vehicle modifications. Mayer further testified that a previous unrelated hearing from December 1988 was controlling precedent, the decision from which was entered into evidence without objection. A written decision upholding the agency's denial of financial assistance to purchase a van was issued on March 17, 1993.
Gaynor filed a complaint with this Court on April 19, 1993. She contends that the appeal's officer erred in concluding that the DHS regulations' validity prohibit the purchase of a van, failed to follow federal law which requires an individualized assessment of the needs of a VR service recipient, and utilized the wrong legal standard in determining Gaynor's transportation needs.
This court's review of the DHS decision is governed by Section 42-35-15(g) of the Rhode Island General Laws which provides in part:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Essentially, when reviewing an agency decision this court must not substitute its judgment for that of the agency in regard to the credibility of witnesses or weight of the evidence. Costav. Registry of Motor Vehicles, 543 A.2d 1307, 1209 (R.I. 1988);Carmody v. R.I. Conflict of Interest, 509 A.2d 453, 458 (R.I. 1986). Thus, the court must uphold the agency decision if it finds any legally competent evidence to support the agency decision. Turner v. Department of Employment Security,479 A.2d 740, 742 (R.I. 1984). The court will reverse factual conclusions of administrative agencies only when they are "totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). Of course questions of law decided by Administrative Agencies are not binding on the court. Carmody at 458. Therefore, this court "may review questions of law to determine the law and its applicability to the facts." Chenot v. Bordeleau, 561 A.2d 891, 893 (R.I. 1989).
In June, 1993, Gaynor graduated from Roger Williams College with a degree in architecture. It is uncontested that the VR agency provided necessary transportation services to Gaynor while she was a student and continues to provide transportation to employment interviews. As a preliminary issue, this court must address defendant's argument that the case is moot.
In a supplemental memorandum filed on September 17, 1993, DHS argues Gaynor's case is speculative and should be dismissed as moot. Contrary to defendant's argument, the facts contained in the record do not render plaintiff's case moot. "A case is moot if it raised a justiciable controversy at the time the complaint was filed, but events occurring after the filing have deprived the litigant of an ongoing stake in the controversy." Seibert v.Clark, 619 A.2d 1108, 1110 (R.I. 1993). On the facts of the case, Gaynor had a justiciable controversy at the time the complaint was filed. Even through plaintiff was enrolled as a full-time student and was preparing to begin her job search, her claim is capable of repetition throughout her job search process. Thus, plaintiff has an ongoing stake in the controversy and her claim is not moot. In addition, a case is not moot if a definite governmental action or policy continues to adversely affect a present interest. Weinstein v. Bradford, 473 U.S. 147, 148 (1975). The record discloses that Gaynor has been adversely affected by DHS's policy and will continue to be so affected until the court reviews her stated claim. In addition, the record reflects DHS's policy of not purchasing vehicles has effectively denied assistance to at least one other eligible recipient of VR benefits. The U.S. Supreme Court has noted that issues are not moot if they are "capable of repetition, yet evade review." So.Pac. Terminal Co. v. Int. Comm., 219 U.S. 498, 515 (1911). Further, this court is mindful that "there are questions of extreme public interest which are capable of repetition but somehow evade review . . . these demand our attention, and quite properly come before us for decision." Mello v. Superior Court,117 R.I. 578, 581, 37 A.2d 1262, 1263 (1977). Accordingly, since plaintiff's claim is capable of repetition, a live justiciable controversy remains, and defendant's assertion that this case is moot fails.
The central issue is whether the VR agency violated federal regulations in applying its own policy of not including the purchase of a van as transportation services. Provision of VR services is grounded in the fundamental belief that all individuals are entitled to realize their life's goals . . . and to be assisted on an individualized basis." DHS Manual
150020021 § 101.1. Participating states must submit a state plan annually to the Federal Rehabilitation Services Administration (hereinafter "RSA") outlining policies and procedures for administration of the state rehabilitation program in accordance with the Rehabilitation Act of 1973. 29 U.S.C. § 721. Although a state's participation in the program is voluntary, a participating state must fully comply with federal guidelines and regulations governing the Rehabilitation Act. Pennhurst StateSchool v. Halderman, 451 U.S. 1, 11 (1981). The governing federal law is found at 29 U.S.C 720 et seq. and 34 C.F.R. Part 361. Rhode Island's VR agency is administered by the DHS as authorized under R.I.G.L. § 42-12-1. Accordingly, the DHS administration is subject to the Rehabilitation Act of 1973 and its rules and regulations must conform to federal law. 19 C.R.I.R. 15080001 at 001 (1992).
The DHS's administration in this matter inherently entailed interpretation of its own regulations. Moreover, since Rhode Island's VR program must comply with governing federal law, the decision also involved interpretations of federal law. Because the meanings of statutes and regulations are questions of law for the court to examine, the DHS's legislative interpretations are not binding on this court. Gryguc v. Bendick, 510 A.2d 937, 938-39 (R.I. 1986).
Gaynor argues the blanket denial of assistance with the purchase of a vehicle violates federal law. Under federal law, the scope of services which may be provided by a VR agency is very broad. State VR agencies may provide "any goods or services which are necessary to render an individual with a disability employable." 29 U.S.C. § 723(a). An illustrative list of allowable expenses is put forth in 29 U.S.C. § 723(a) and incorporated into Rhode Island's state plan. The only document contained in the record supporting the VR agency's policy of not purchasing vehicles for individuals is the Rhode Island Vocational Rehabilitation Policy and Procedure Manual, Section 47, IV Limitations 1(a) as merged into the March 17, 1993 Administrative Hearing Decision. That policy provides that "IV LIMITATIONS 1. The Agency will not provide or purchase: a. Vehicles for individual clients; . . . ." The record indicates that the Motor Vehicle Modification Policy was last revised in August 1985. The RSA has knowledge of this policy as the DHS is required to file annual reports of the state plan. 29 U.S.C. § 721. Since there is no evidence contained in the record that RSA finds DHS refusal to purchase vehicles objectionable and the RSA has received the annual report of the state plan, this court finds the policy comports with federal law.
Gaynor asserts three designations for the purchase of a van, "transportation," "equipment," and "other goods and services that can reasonably be expected to benefit an individual with handicaps in terms of employment." Rhode Island Vocational Rehabilitation Combined State Plan, 1992, 1993, 1994, Section 6.1(a). Transportation services are qualified as "in connection with the rendering of any vocational rehabilitation service."29 U.S.C. § 723(10). Although under federal law the purchase of a vehicle is an allowable expense, the states are only required to provide reasonable transportation services. No federal law specifically mandates the purchase of vehicles upon the request of an eligible recipient. DHS has no obligation to provide every imaginable beneficial service, but merely to provide services reasonably expected to facilitate individual employment. Since this court finds that reasonable transportation services are available to the plaintiff, this court is unable to find a violation of federal law.
Alternatively, Gaynor claims that the van is a purchase falling within the definitions of "equipment" and "other goods and services." A van by its very nature is a mode of transportation while "other goods and services" does not include any item that may be requested. Simply because an item is requested does not automatically guarantee its supply. The state is authorized to establish the scope and nature of all VR services. 34 C.F.R. 361.42(b). As a result, it is within DHS authority to impose reasonable restrictions. Federal law requires that transportation services be offered but does not specify any particular means. DHS maintains that its clients have several transportation options. Transportation is a separate and distinct service as listed in the state plan. "Other goods and services" is presumably intended to include necessary items that might otherwise fail to be recognized as essential for an individual's fulfillment.
Gaynor further claims the blanket policy statement must not be followed because in determining whether to provide specific goods or services, VR agency is required to conduct an individual assessment. Federal law mandates a state VR agency to develop an IWRP for each eligible service recipient. 29 U.S.C. § 721(a)(9). This IWRP must be "designed to achieve the employment objective of the individual, consistent with the unique strengths, resources, priorities, concerns, abilities and capabilities of the individual." 29 U.S.C. § 722(b)(1)(B). Blanket policy statements denying the opportunity for individual assessments have been invalidated by some courts. As support, Gaynor cites Schornsteinv. New Jersey Division of Vocational Rehabilitation Services,519 F. Supp. 773 (D. NJ. 1981). In that case, the Federal District Court found a policy denying interpreter services to any deaf college student violated federal law by failing to provide individual assessment of need. Accordingly, this court finds the analysis of violation of federal law emanates from failing to address an individual need not from the existence of a policy. Furthermore in Schornstein, no other comparable services were offered to qualified recipients of benefits in that case. In the present case, VR provides transportation services and merely restricts the purchase of vehicles for private use. In Scott v.Parham, 422 F. Supp. 111 (ND Ga. 1976) the court reviewed the legislative history for IWRP development finding "Congress intended for state plans to be administered in such a way that they would be able to respond to the particular needs of each individual." 422 F. Supp. at 113. Applying Scott to the case at bar, as long as an eligible recipient's transportation needs are met, DHS has not violated the individual's right to receive services. The record reflects that Gaynor has indeed utilized transportation services provided by DHS to get to employment interviews since she graduated in the spring.
The IWRP represents an understanding between the VR agency and the handicapped individual. According to the legislative history of the Rehabilitation Act of 1973, the IWRP's purpose is "to improve communication between the handicapped individuals to be served and the rehabilitation counselors who sincerely wish to see them served." The IWRP is intended to offer an opportunity for the client to participate in the decision-making process regarding services requested. The legislative history further indicates that a serious lack of communication has plagued state VR agencies for several decades. This court attributes this lack of communication to a lack in follow-up services.29 U.S.C. § 722(b)(2) requires that the IWRP be reviewed annually. This ensures that individual's rights are protected and that the counselor feels satisfactory progress is being made towards the stated goal. However, the record shows that Gaynor's IWRP has not been reviewed since August, 1990. A review is long overdue. During such a review, Gaynor and her counselor may find that additional transportation services, though not including the purchase of a vehicle pursuant to the state plan, are needed as she commences the second phase of the licensing process.
Although this court finds that the defendant has violated federal statutory provisions by failing to conduct an annual review of the IWRP with the plaintiff, that in itself does not invalidate the agency's decision with respect to denying the purchase of a private vehicle. The purpose of VR services is to make a person employable. Gaynor has availed herself of the program's benefits in attaining her education. She has graduated from school and is prepared to start an internship. However, since the internship is a fundamental requirement in becoming a licensed architect, she should continue to receive benefits until she is truly employable. To do otherwise would waste the energy and resources which the defendant has invested for the plaintiff.
Finally, Gaynor argues that the Appeals Officer erred in applying the proper standard for review. She argues that the appropriate legal standard, set forth in both state regulations and the state plan, is that an allowable good or service is one which is shown to "reasonably be expected to benefit an individual with a disability in terms of employability." ORS Manual, Section 115.6, Part II. Gaynor maintains that the purchase of a van for her transportation needs will benefit her employability and ensure successful completion of her IWRP goals. Plaintiff's expert testified in detail regarding the responsibilities and demands Gaynor may reasonably expect to encounter during her required, three year internship in architecture. Although these arguments have merit, this court finds the agency decision was not affected by error of law nor was erroneous after review of the reliable, probative, and substantial evidence contained in the record. The agency decision was neither arbitrary nor capricious since the issue is an allowable expense not a required one. DHS has maintained that alternative modes of transportation are available to the plaintiff and that purchasing a van for her will create more problems to be resolved, i.e. who will drive the van and who will insure it. Certainly, as plaintiff argues, these consequential issues could be resolved. Plaintiff further contends that due to her expected duties in an architecture internship, alternative modes of transportation are less convenient. However, state VR agencies are encouraged to maximize their ability to serve eligible recipients by utilizing community resources.29 U.S.C. § 721(12). Public transportation certainly falls within the intended definition of community resources. Since legally competent evidentiary support is contained in the record, this court must uphold the agency decision.
Pursuant to the State Equal Access to Justice Act, R.I.G.L. §42-92-1 et seq., plaintiff has filed for attorney's fees. In order to receive attorney's fees, plaintiff must prevail by demonstrating the agency decision was not substantially justified. In meeting the "substantial justification" test, the agency's decision must be reasonable, well grounded in law and fact though not necessarily correct. Taft v. Pare, 536 A.2d 888
(R.I. 1988). Since the plaintiff has not prevailed and the agency's decision is substantially justified, the request for attorney's fees is denied.
This court does not diminish the significance of physical barriers to the mobility of disabled individuals. This court also realizes that for maximum employment opportunities for the disabled to be created, these individuals must be able to have transportation to their jobs. However, this court finds an insufficient nexus between ownership of a vehicle and enhanced employability in this particular case. Transportation is a supportive service enabling a client to receive the benefits of other VR services. Rehabilitative Services Manual 1529.04. Transportation must be provided by DHS but no federal law mandates that this service include purchasing a vehicle for private use. The record presents sufficient evidentiary basis for the agency decision. Thus, the March 17, 1993 decision of the Administrative Appeals Officer for the DHS is affirmed with the stipulation that Gaynor's IWRP be reviewed, updated and guaranteed in accordance with federal requirements until she completes all phases of the licensing process.