Lillian KRIKORIAN

v.

**RHODE ISLAND DEPARTMENT OF HUMAN SERVICES.**

Cherie MARTINS

v.

**RHODE ISLAND DEPARTMENT OF HUMAN SERVICES.**

Nos. 91–112–M.P., 91–190–M.P.

Supreme Court of Rhode Island.

April 9, 1992.

Gretchen Bath, R.I. Legal Services, for plaintiffs.

Dorthy Fobert, Sp. Asst. Atty. Gen., Providence, for defendant.

Richard M. Borod, ACLU, Barry Best, R.I. Protection & Advocacy System, Inc., Providence, for intervenor.

## OPINION

KELLEHER, Justice.

This is a consolidated matter in which two petitions for writ of certiorari have been granted to review two decisions of the Superior Court with respect to the award of attorney's fees pursuant to G.L.1956 (1988 Reenactment) chapter 92 of title 42, entitled Equal Access to Justice For Small Businesses and Individuals (Equal Justice Act or the act).

A brief summary of the facts of both matters is necessary. In the first controversy, *Krikorian v. Rhode Island Department of Human Services*, Lillian Krikorian (Krikorian) filed an application for medical assistance with the Department of Human Services (DHS or the department) on August 4, 1989. On August 8, 1989, Krikorian was admitted to the Woonsocket Health Center for treatment of a hip injury. The record reveals that Krikorian's son, Richard Krikorian (Richard), a California resident, came to Rhode Island in late August 1989 to attend his father's funeral. At this time Richard, his father, and Krikorian were all joint holders of a bank account containing $10,000. The record further reveals that on August 30 and 31, 1989, Richard withdrew approximately $6,100 from the account, leaving a balance of $3,900 before returning to California. Subsequently a DHS representative corresponded with Richard's California attorney in an attempt to recoup the money withdrawn or to rebut Krikorian's ownership of the money. Richard claimed that the money was owed to him by his parents and refused to return it. The money was never recovered, and Krikorian filed the necessary forms with DHS in an attempt to rebut her ownership of the funds in the joint account.

On October 15, 1989, DHS denied Krikorian's application for medical-assistance benefits, finding that her resources were in excess of the applicable eligibility limits. Krikorian appealed that decision to the DHS appeals office, which upheld the finding that Krikorian was not eligible for medical assistance for August 1989. That decision also indicated that Krikorian would be conditionally eligible for medical

assistance after September 1, 1989, if she initiated legal action against her son to recover the funds. Krikorian filed an appeal from the DHS decision to the Superior Court pursuant to G.L.1956 (1988 Reenactment) § 42–35–15 and was represented free of charge by Rhode Island Legal Services. The trial justice affirmed the DHS determination that Krikorian was ineligible to receive medical-assistance benefits for the month of August 1989 but also reversed the DHS decision requiring Krikorian to initiate legal action to be eligible for medical-assistance benefits after September 1, 1989.

In October 1990 Krikorian moved for an award of attorney's fees pursuant to the act. In February 1991 the trial justice awarded Krikorian $662.25 in attorney's fees. In his decision the trial justice stated, "The defendant's [DHS's] position was not clearly reasonable nor wellfounded in law and fact and therefore the defendant [DHS] was not substantially justified in actions leading to the proceedings and the proceeding itself." The department then petitioned this court for a writ of certiorari in order to obtain review of the legality of the judgment for attorney's fees rendered in favor of Krikorian.

In the second controversy, *Martins v. Rhode Island Department of Human Services*, DHS held an administrative hearing to determine whether Cherie Martins (Martins) had intentionally violated the rules of the food-stamp program. On November 21, 1989, DHS issued a decision disqualifying Martins from participating in the food-stamp program for six months. As in the *Krikorian* controversy, pursuant to § 42–35–15, Martins appealed from the DHS decision to the Superior Court and was represented free of charge by counsel from Rhode Island Legal Services.

On review the Superior Court reversed the DHS decision, finding it to be "clearly erroneous in view of the reliable, probative, and substantial evidence." The Superior Court also found that "[t]he hearing officer's determination lacks the substantial evidence foundation necessary to a finding of an intentional violation." The depart-

ment did not appeal the decision of the Superior Court to this court.

Martins then filed a motion for an award of attorney's fees under the Equal Justice Act on the grounds that the DHS decision disqualifying her participation in the food-stamp program was not substantially justified. In April 1991 a trial justice denied Martins's motion, holding that as a matter of law, attorney's fees cannot be awarded pursuant to the act to a litigant who does not incur any out-of-pocket expenses. Having so found, the trial justice did not address whether the agency action was "without substantial justification" and therefore did not render a decision on that issue. Martins then petitioned this court for a writ of certiorari.

There are two issues raised by this consolidated matter that we shall address; the first may be stated as follows: Is an award of attorney's fees pursuant to the act available to a litigant who does not incur any out-of-pocket expenses?

Martins argues that a litigant should not be precluded from an award of attorney's fees under the act solely because such litigant was represented free of charge. Martins notes that the Rhode Island Equal Access to Justice Act is modeled on the Federal Equal Access to Justice Act, 28 U.S.C.A. § 2412 (West 1978), and that the federal act, as construed by federal courts, allows parties represented free of charge by legal-service organizations to be awarded legal fees. Martins maintains that this court should follow the construction put on the federal act by federal courts and therefore find that the state act provides for attorney's fees for litigants represented free of charge.

In support of her position Martins also contends that the purpose of the act is to deter administrative agencies from unjustifiably exercising their powers against individuals and to encourage individuals to contest unjust actions. Martins argues that the purpose of the act would be frustrated if parties represented free of charge are precluded from an award of attorney's fees.

Amici curiae Rhode Island Affiliate of the American Civil Liberties Union (ACLU) and the Rhode Island Protection and Advocacy System, Inc. (RIPAS), argue that the Superior Court's holding in *Martins* that attorney's fees may be awarded pursuant to the act only for actual "out-of-pocket expenses" incurred and paid by Martins frustrates the express purpose of the act. The ACLU and RIPAS maintain that this holding limits the availability of attorney's fees to those who can and do pay such fees "up front" and therefore creates no incentive for attorneys to accept cases in which parties cannot pay litigation expenses "up front."

The department argues that as a matter of law, an award of attorney's fees pursuant to the act is not available to a litigant who does not incur any out-of-pocket expenses. The department maintains that by its clear and unambiguous terms, the act limits the recovery of a prevailing party to reimbursement of those reasonable litigation expenses, including attorney's fees, actually incurred by the litigant. The department also contends that the comparable provisions of the federal act are significantly and materially different from those of the Rhode Island act and that, therefore, Rhode Island should not follow the construction put on the federal act by federal courts.

Rhode Island's Equal Access to Justice Act "was propounded to mitigate the burden placed upon individuals and small businesses by the arbitrary and capricious decisions of administrative agencies made during adjudicatory proceedings." *Taft v. Pare*, 536 A.2d 888, 892 (R.I.1988). General Laws 1956 (1988 Reenactment) § 42–92–1(b) provides in part that "to encourage individuals and small businesses to contest unjust actions by the state agencies, the legislature hereby declares that the financial burden borne by these individuals and small businesses should be, in all fairness, subject to state reimbursement of reasonable litigation expenses when the individual

or small business prevails in contesting an agency action, which was without substantial justification." Section 42–92–3 provides in pertinent part:

"(a) Whenever the agency conducts an adjudicatory proceeding subject to this chapter, the adjudicative officer shall award to a prevailing party reasonable litigation expenses incurred by the party in connection with that proceeding. The adjudicative officer will not award fees or expenses if he finds that the agency was substantially justified in actions leading to the proceedings and in the proceeding itself. The adjudicative officer may, at his or her discretion, deny fees or expenses if special circumstances make an award unjust.

"(b) If a court reviews the underlying decision of the adversary adjudication, an award for fees and other expenses shall be made by that court in accordance with the provisions of this chapter."

Rhode Island's Equal Access to Justice Act is modeled on the Federal Equal Access to Justice Act, 28 U.S.C.A. § 2412 (West 1978). When a Rhode Island statute is modeled on a federal statute, this court "should follow the construction put on it by the federal courts, unless there is strong reason to do otherwise." *Laliberte v. Providence Redevelopment Agency*, 109 R.I. 565, 575, 288 A.2d 502, 508 (1972); *see Iorio v. Chin*, 446 A.2d 1021, 1022 (R.I. 1982). Section 2412(d)(1)(A) of title 28 of the federal act provides that "a court shall award to a prevailing party * * * fees and other expenses * * * incurred by that party in any civil action * * * including proceedings for judicial review of agency action, brought by or against the United States * * * unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." Section 2412(d)(2)(A) of title 28 defines "fees and other expenses" to include "reasonable attorney fees."

In interpreting the federal act, the Court of Appeals for the Eighth Circuit held that the fact that the plaintiff was represented by counsel on a pro-bono basis does not preclude an award of attorney's fees. *Cor-*

*nella v. Schweiker*, 728 F.2d 978, 987 (8th Cir.1984). The court reasoned:

"[A]llowing fee awards to *pro bono* counsel under [the act] 'serves to insure that legal services groups, and other *pro bono* counsel, have a strong incentive to represent indigent * * * claimants.' * * * If attorneys' fees to *pro bono* organizations are not allowed in litigation against the federal government, it would more than likely discourage involvement by these organizations in such cases, effectively reducing access to the judiciary for indigent individuals. Such a result surely does not further the goals of the [act]." *Id.* at 986–87.

The court went on to say that "the district courts have allowed *pro bono* awards" under the act "with virtual unanimity." *Id.* at 987. The Eleventh Circuit Court of Appeals held that an award of attorney's fees to a successful plaintiff "is not contingent upon an obligation to pay an attorney and is not affected by the fact that no fee was charged." *Martin v. Heckler*, 773 F.2d 1145, 1152 (11th Cir.1985).

In fact a survey of pertinent federal case law demonstrates that the federal act has a settled construction with regard to the issue at hand that may be stated as follows: Parties represented free of charge by legal-service organizations or otherwise are entitled to fees on the same basis as all other parties. *See Martin*, 773 F.2d at 1152; *Cornella*, 728 F.2d at 985–87; *DiGennaro v. Bowen*, 666 F.Supp. 426, 430 (E.D.N.Y. 1987); *Dunn v. Heckler*, 614 F.Supp. 45, 48 n. 1 (E.D.N.C.1985); *Kauffman v. Schweiker*, 559 F.Supp. 372, 374 (M.D. Pa. 1983); *In re Hagan*, 44 B.R. 59, 62 n. 5 (Bankr.D.R.I.1984). As of 1984 the federal courts allowed such awards "with virtual unanimity." *Cornella*, 728 F.2d at 987.

We do not agree with DHS's contention that § 42–92–3 of the Rhode Island act is significantly and materially different from 28 U.S.C.A. § 2412(d)(1)(A) of the federal act. The language employed by both sections is substantially the same and simply states that courts shall award "fees and other expenses" incurred by prevailing par-

ties in contesting agency actions that are without substantial justification.

It is a well-settled principle in this jurisdiction that this court is the final arbiter on questions of statutory construction. *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I. 1987). In construing a statute, this court attempts to ascertain the intent of the Legislature by considering the act in its entirety and by viewing it in light of circumstances and purposes that motivated its passage. Legislative intent is determined "through an examination of the language of the statute itself, giving the words of the statute their plain and ordinary meaning." *McGee v. Stone*, 522 A.2d 211, 216 (R.I.1987). However, we shall not construe a statute in such a way as to violate the intent of the Legislature in enacting the statute. *Lake v. State*, 507 A.2d 1349, 1352 (R.I.1986).

One of the purposes of the Rhode Island act is to discourage administrative agencies from unjustly proceeding against "individuals or small businesses which are least able to contest the agency's actions." Section 42–92–1. Clearly those who resort to Rhode Island Legal Services for representation because they cannot afford litigation expenses fall within the category of those "individuals * * * least able to contest the agency's actions." *Id.* If the Legislature intended that only out-of-pocket expenses paid by individuals or small businesses be reimbursed, then any litigant represented pro bono would not be entitled to reimbursement. Such a situation would discourage parties with meritorious claims from challenging administrative agencies and force pro-bono counsel and legal-service agencies to represent fewer parties with meritorious claims.

Given the similarity of both the legislative intent and the language of the Rhode Island and the federal acts, we find no strong reason to depart here from the construction put on the federal act by the federal courts. Furthermore, when we consider the act in its entirety and view it in light of circumstances and purposes that motivated its passage, the only meaningful construction we discern is that the Legislature intended for attorney's-fee awards to be available to those attorneys or organizations that represent prevailing litigants who do not incur any out-of-pocket expenses.

The other issue raised by this consolidated matter is whether Martins and Krikorian are entitled to an award of attorney's fees pursuant to the act on the basis of the "substantial justification" test.

Section 42–92–1(b) of the act states that "the financial burden borne by these individuals and small businesses should be, in all fairness, subject to state reimbursement of reasonable litigation expenses when the individual or small business prevails in contesting an agency action, *which was without substantial justification.*" (Emphasis added.)

Section 42–92–3(a) of the act provides that "[t]he adjudicative officer will not award fees or expenses if he finds that the agency was substantially justified in actions leading to the proceedings and in the proceeding itself." Section 42–92–2(f) defines "[s]ubstantial justification" as meaning that "the initial position of the agency, as well as the agency's position in the proceedings, has a reasonable basis in law and fact." Section 42–92–3(b) states, "If a court reviews the underlying decision of the adversary adjudication, an award for fees and expenses shall be made by that court in accordance with the provisions of this chapter." In meeting the substantial-justification test, the state must show " 'not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct.' " *Taft v. Pare*, 536 A.2d 888, 893 (R.I.1988).

In the *Krikorian* controversy the trial justice held that "the [department's] position was not clearly reasonable nor well-founded in law and fact and therefore the defendant was not substantially justified in actions leading to the proceedings and in the proceedings itself." The only question before this court is whether the trial justice correctly determined that DHS was not substantially justified in its actions

leading to the proceedings and in the proceedings itself.

In his decision on the merits the trial justice affirmed DHS's determination that Krikorian was ineligible to receive medical-assistance benefits for the month of August 1989. The trial justice reversed DHS's decision requiring Krikorian to initiate legal action against her son to be eligible for medical assistance after September 1, 1989.

The department maintains that in conditioning Krikorian's receipt of medical-assistance benefits upon her institution of legal action against her son, it relied upon its interpretation of its mandate, set forth in DHS Policy Manual § 312(II)(A). This section requires applicants to undertake all "reasonable actions" to render income or resources available, including the institution of legal action. The department contends that the trial justice relied on his own interpretation of § 312 in reaching a contrary conclusion and that DHS's interpretation of its own regulations should prevail over the court's interpretation.

We are of the opinion that the trial justice correctly determined that DHS was not substantially justified in requiring Krikorian to initiate legal action against her son as a condition for medical-assistance eligibility.

The trial justice quoted § 312(II)(A)(1) of the DHS manual as follows: "Clients are required, as a *condition of eligibility*, to take all *reasonable* actions to make income/resources available to meet needs. A reasonable action is one that will likely result in more financial benefit accruing to a household than the cost of obtaining the benefit. * * * The client must make a good faith effort to bring the resources or income into a state of availability." The trial justice held that "based on the evidence contained in the entire record concerning the son's intention not to return the money and the fact that he is domiciled in California does not make it 'likely' that the plaintiff's financial benefit will exceed the cost of obtaining those funds in her son's possession."

The trial justice noted that "given the plaintiff's condition [failing physical and mental health], the requirement of her initiating a legal action would be an extreme detriment to her health." This finding was based on evidence submitted at the intra-agency appeal. The trial justice concluded his analysis by noting that "a reading of § 312 in its entirety reveals that an applicant is required to take all reasonable steps, and initiating a legal action may be required if it is reasonable. This court cannot find ample evidence in the record to support this requirement of legal action as being a reasonable step in this circumstance."

We believe that the trial justice's decision is supported by the evidence and that, consequently, DHS's argument fails.

■ We now turn to the issue of whether Martins is entitled to attorney's fees under the act on the basis of the substantial-justification test. Martins notes that DHS never sought appellate review of the underlying Superior Court decision that found that DHS's action had been "clearly erroneous" and unsupported by substantial evidence and that the findings contained therein are final and binding.

In denying Martins's motion for an award of attorney's fees, the trial justice ruled only that an attorney's-fees award pursuant to § 42–92–1 would not be available to litigants who did not incur any out-of-pocket expenses. In ruling on the motion for attorney's fees, the trial justice never reached the question of whether DHS's actions were substantially justified. Section 42–92–3 mandates that decisions pertaining to an award of attorney's fees under the act contain written findings and conclusions. Therefore, this court believes that the *Martins* controversy should be remanded to the Superior Court in order that such written findings and conclusions can be made in response to Martins's motion for an award of attorney's fees.

For the reasons set forth above, the petition for certiorari in *Krikorian* is denied, the writ heretofore issued is quashed, and the judgment of the trial justice in favor of Krikorian is affirmed. The petition for cer-

tiorari in *Martins* is granted, the decision of the trial justice with regard to the motion for attorney's fees is quashed, and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.